December 3, 1906.

————o————

No. 4022.

(Court of Appeal, Parish of Orleans.)

JAMES F. McCALEB vs. BOARD OF COMMISSIONERS FOR THE BURAS LEVEE DISTRICT.

Where the tax is imposed, not for the direct benefit of the party who sues to recover it back as paid in error, but for the general support of the commonwealth, and when it is levied on property or on a profession exempt by law from

taxation, then the money must be refunded, but where the tax is on property, whether exempt from general taxation or not and where the assessment may rather be considered a toll or contribution than a tax and where the property derived a direct benefit from the improvements made by the imposition of such a tax or assessment, as for example, the *levee tax*, devoted exclusively to the building and maintenance of levees along the Mississippi River, the party cannot then recover back his money, because as he enjoys a direct advantage from its expenditure, it is not equitable that he should have both the benefit and the money.

There is a natural obligation on him to pay, therefore, he cannot recover it.

Appeal from 29th Judicial District Court No. 372—3689 transferred from Supreme Court.

E. H. McCaleb, for plaintiff and appellee.

John Dymond, Jr., for defendant and appellant.

ESTOPINAL, J. The facts of this case are admitted, and therefore, there is submitted to this Court for determination a naked question of law.

We deem it unnecessary for the purposes of this opinion to produce here verbatim the facts submitted and admitted by parties to these proceedings.

It will suffice to say that the plaintiff, Dr. McCaleb, in March, 1892, bought of Dr. Wm. B. Booth a certain tract of land lying in the parish of Plaquemines and within the territory over which the defendant Levee Board exercises jurisdiction; said land being contiguous to the Fort Jackson Reservation, belonging to the United States Government.

The property acquired by plaintiff from Dr. Booth was originally part of *a larger* tract which was first acquired by Anthony de St. Maxent from Baron de Carondelet, under the Spanish Government, and which was subsequently confirmed by the United States to Smith and Hode, assignees, by a patent of the United States issued in 1847, the Government specially reserving fifteen hundred Castillian varras from the outer works around Fort Jackson.

When, during the year 1903, the United States Government caused a survey of the Fort Jackson Reservation to be made to establish the lower boundary of the said Reservation,

114

it was found that the boundary included all but a small fractional portion of the land purchased by plaintiff from Dr. Booth.

Plaintiff was then ordered by the Federal Government to vacate the land found to be its property. This he did.

Plaintiff then instituted suit in the United States Circuit Court against Dr. Richard S. Booth, heir and legatee of Dr. W. B. Booth, and obtained judgment against him for two thousand dollars ($2000.00), the price paid by plaintiff for the property, and for one thousand five hundred dollars ($1,500.00), being the value of buildings, trees and other improvements on the property at the time of eviction.

From the time of his acquisition until the time of his eviction, plaintiff paid levee and acreage taxes on the entire property deeded to him by Dr. W. B. Booth, said taxes aggregating for the years 1894 to 1902, inclusive, the sum of one hundred and fifty five dollars ($155.00).

Plaintiff claiming that he had been evicted from six-sevenths (6-7) of the property which he had purchased, brought this suit to recover six-sevenths (6-7) of the one hundred and fifty-five dollars ($155.00) of levee taxes paid by him for the years above stated, or the sum of one hundred and thirty-two dollars and eighty-six cents ($132.86).

Plaintiff avers that he paid said taxes on lands belonging to the United States Government through error, and that the defendant Levee Board and the tax collector were without authority to levy and collect taxes upon the property disclosed by the survey of 1903, as belonging to the United States Government; that said taxes were levied in violation of the Constitution and the laws of the United States and the Constitution and Laws of the State of Louisiana, that he was under no legal or moral obligation to pay said levee taxes upon said land belonging to the United States; said lands being specially exempt by law from the payment of said taxes.

Defendant urges that the taxes paid to it by the plaintiff inured to the latter's benefit in this: That the said taxes were used in building levees which protected said land, and made it possible for plaintiff to reap the fruits and revenues produced by said land; and that there is a natural obligation on the part of plaintiff to pay said taxes, and that in consequence he cannot recover what he has paid.

Defendant urges that although ordinary taxes, i. e. taxes levied for general purposes of government, State and parochial, may be successfully contested, the jurisprudence of this State indicates the contrary as to levee taxes where special benefits have been conferred on the tax payer. There was judgment in the District Court in favor of plaintiff for seventy-five dollars and ninety-two cents ($75 92), from which judgment defendant appeals, plaintiff answering the appeal and asking for full sum claimed.

Act 157 of 1846, grants to the United States Government jurisdiction over the Fort Jackson Reservation, and specially exempts the United States Government from the payment of all taxes and assessments which may be levied by authority of this State while said reservation remains the property of the United States and is used by it for military purposes.

In view of the exact and precise terms of the Act of the Legislature (No. 157 of 1846), granting jurisdiction over and exempting the United States Government from the payment of all taxes and *assessments* on the Fort Jackson Reservation, we were inclined to the opinion that no matter the condition, under which the taxes were paid or the character of said taxes, the exemption was absolute, but an examination of the authorities satisfies us that the jurisprudence of this State has consistently differentiated as between levies of taxes for general purposes of State and parochial government and taxes levied for special purposes, among these, "levee taxes."

Pretermitting the discussion on these lines we take up the defense urged that there was a natural obligation on the part of plaintiff to pay the levee and acreage tax on the property held as his own, enjoyed as such, and from which he derived benefits and revenues made possible by the maintenance of the levee in front of his place, and that having paid his just and fair quota for levee maintenance, he is without right now to claim reimbursement.

This position of defendants appears to us to be pregnant with considerable merit.

The Code of Practice provides that "natural obligations give no right of action, but what has been paid pursuant to those obligations is not subject to repetition."

In Bank of New Orleans vs. City of New Orleans 12 A. p. 421 the Court, after reviewing the jurisprudence on the subject, deduced the following principles:

"Where the tax is on property, whether exempt from general taxation or not, and where the assessment may rather be considered a *toll or contribution* than a tax, and where the property derives *a direct* benefit from the improvements made by an imposition of a tax or assessment, as for example, in the case of the opening of a street, the benefit to the property holders in its vicinity, the party cannot then recover back his money, because as he enjoys a direct advantage from its expenditure, it is not equitable that he should have both the benefit and the money. There is a natural obligation on him to pay, therefore, he cannot recover it."

As differentiating between taxes levied for special purposes and those imposed for general govermental purposes, the court said: "Where the tax is imposed, not for the direct benefit of the party who sues to recover it back as paid in error, but for the general support of the commonwealth, and when it is levied on property or on a profession exempt by law from taxation, then the money must be refunded, because as the legislative power did not deem it requisite to tax such property or profession for its support, the taxation thereof was unnecessary for the purpose of defraying the expenses of the State. It would not then be just to force a party to pay what was not needed, and he can recover back taxes paid, there being no natural obligation on him to pay, etc., etc."

In the case at bar plaintiff held the property for a term of years, and thinking in good faith, that it belonged to him, he enjoyed during these years security and immunity from overflow by the Mississippi River, because of the building and maintenance of the levee on his place and vicinity, and it appears to us that having paid his quota of the contribution, he cannot now recover it back.

It is an accident of the case that the property held by plaintiff as owner, was, in truth and in fact, the property of the United States, and therefore, exempt from taxation.

We are not called upon to decide whether the land in question, its metes, bounds and ownership now established in the United States, may now be taxed or assessed for any purpose whatsoever.

We have examined the case of Van Brocklin vs. Anderson, decided by the Supreme Court of the United States, and the other authorities cited by the plaintiffs, but we do not find that they touch this case. They simply enunciate the prin-

117

ciple that property of the United States specially exempted from taxation by Federal and State laws cannot be taxed or assessed for any purpose. There can be no question as to this point. The question here submitted is: Can the plaintiff after occupying and enjoying the property of the United States for years, and contributing his quota of funds for levee protection, now recover back his contribution? Equity strongly repels the idea, and the law does not support it. The logic of plaintiff's contention amounts to this: "that no person holding property under an invalid title could be made to pay local assessments from which flow special benefits."

In the case at bar plaintiff was not in possession of the lands as lessee or as the agent of the United States, but held as owner and reaped benefits specially valuable to himself, and cannot now, when he discovers that the lands were exempt from taxation, set up this exemption in an effort to recover back the contribution made by him from which flowed the benefits and protections enjoyed by him during his tenure.

The mere right to withhold payment does not necessarily imply a right to recover back what had been paid. C. C. 1751, 1752, 2280, 2281.

Our attention is directed by defendant's counsel to an interesting decision of our Supreme Court, reported in the 2 An. p. 329 (Crowley et als vs. Copley), wherein the court upheld the validity of *levee taxes* on certain lands exempted from taxation by act of Congress, and laid down the doctrine that this character of taxes or assessment, were not such as were intended by the law providing the exemption.

We find the Act of Congress of February 20th, 1811, provides for the exemption of those lands from the payment of *any tax*. Our court in the case cited supra said *levee taxes* were not contemplated or intended by said exemption.

The history of the case is briefly, as follows:

When the Congress of the United States authorized the people of the territory of Orleans to form a Constitution and State government, it provided that if the people of the future State of Louisiana took advantage of this Act and became a State, all the waste and unappropriated land in the future State of Louisiana should remain the property of the United States, which the United States should be subsequently at liberty to sell, and that in the event of a subsequent sale by the United States of such lands, the land so sold should re-

main exempt from taxation for a period of *five years*.

Act of Congress approved February 20th, 1811, U. S. Statutes at Large Vol. 2, p. 641.

In the case cited supra the Court held that "the laws requiring levees to be made on lands on the Mississippi River, are not laws imposing *a tax* within the meaning of the third section of the Act of Congress of the 20th of February, 1811, exempting lands sold by Congress from any tax imposed under the authority of the State Government for five years from the date of the sale."

So we have the Supreme Court of this State in the face of an Act of Congress exempting certain lands owned by the United States from payment of *any taxes*, holding that *levee taxes* are not *taxes* in the contemplation of and within the meaning of the Act of Congress referred to.

A study of the opinion leads us to the plausible inference that it means that though the property of the United States held and used by the Government of the United States, cannot be taxed by the State for any purpose whatsoever, yet, when such property of the United States is occupied by private persons as owners, and these derive special benefits from local assessments or contribution, they cannot set up the exemption from the payment of such taxes, the said exemption not being personal to themselves.

It is therefore adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and the plaintiff's suit be dismissed with costs.

December 3, 1906.

Rehearing refused December 17, 1906.

Writ refused by Supreme Court January 25, 1907.